DONALD R. STRYKER, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 76-184

Opinion filed July 22, 1977.

RECHENMACHER, P. J., dissenting.

Ludolph J. Wilson, of Wilson, Staben & Wilson, of Waukegan, for appellant.

John T. Kennedy, of Querrey, Harrow, Gulanick & Kennedy, of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an action for a declaratory judgment that the plaintiff, Donald R. Stryker, is entitled to uninsured motorist benefits under his automobile insurance policy issued by the defendant, State Farm Mutual Insurance Company. Defendant filed a motion for summary judgment which was granted by the trial court. Plaintiff appeals.

The main issue on appeal is whether an automobile liability insurance policy which reduces uninsured motorist coverage by amounts paid under workmen's compensation is against public policy where the workmen's compensation carrier has waived its subrogation rights to payments under the uninsured motorist coverage and the damages are greatly in excess of the uninsured motorist coverage.

The plaintiff was involved in an automobile accident with an uninsured motorist on April 17, 1973. At that time plaintiff was insured with the defendant under an automobile liability policy which included the minimum statutory uninsured motorist coverage of $10,000 per person and $20,000 per accident. On August 19, 1975, plaintiff filed a complaint for declaratory judgment under section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1). In his complaint the plaintiff alleged he

was injured in an automobile accident with an uninsured motorist and that his damages were greatly in excess of $10,000; that plaintiff had received workmen's compensation benefits for his injuries; that the workmen's compensation carrier had waived subrogation rights to payments under the uninsured motorist coverage; and that the defendant refused to submit plaintiff's demand to arbitration. After making its appearance, defendant filed a motion for summary judgment, asserting that the workmen's compensation benefits to plaintiff exceeded the $10,000 limits of the liability under the uninsured motorist provision to plaintiff's policy; that the policy reduced the limits of uninsured coverage to amounts paid under workmen's compensation; and that the Illinois Supreme Court has approved such limitation provisions in *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 269 N.E.2d 295.

On November 17, 1975, the plaintiff, in response to a request of the defendant, admitted that the plaintiff's workmen's compensation payments exceeded $10,000. On January 27, 1976, counsel for both parties appeared before Judge Thomas R. Doran and argued the motion for summary judgment. Following arguments, Judge Doran granted the defendant's motion and entered judgment accordingly. Plaintiff appeals from that order.

On appeal plaintiff argues that since the workmen's compensation carrier has waived its rights to subrogation of amounts which may be paid under the uninsured motorist provisions of the policy, that *Ullman* is not controlling. Plaintiff contends that the waiver of the "Limits of Liability" provision, the same provision as the Supreme Court construed in *Ullman*, places him in a different position than the plaintiff in *Ullman*. Plaintiff concludes that therefore the "Limits of Liability" provision is contrary to the stated purpose of the uninsured motorist act (Ill. Rev. Stat. 1973, ch. 73, par. 755a), and is void as against public policy.

In *Ullman* the Supreme Court was presented with the issue of whether the "Limits of Liability" provision of the uninsured motorist coverage in Ullman's automobile liability insurance policy with Wolverine Insurance Company violated public policy. In the majority opinion of *Ullman*, the court quoted the pertinent parts from the uninsured motorist act (Ill. Rev. Stat. 1969, ch. 73, par. 755a); the financial responsibility act (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—203) and the "Limits of Liability" provision in question. The court noted that the legislative intent of the uninsured motorist act was,

> " * * * to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act." (48 Ill. 2d 1, 4.)

The court then pointed out that under the Illinois Workmen's

Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.5(b)) an employee who receives compensation under the Act is required to reimburse the employer from any recovery the employee received from a third party legally responsible for the employee's injuries. The majority concluded that if the deduction challenged were permitted, that the employee's position would in fact be the same under the policy as where the tortfeasor carried minimum insurance. In such a case, if the injured employee recovered any money damages from a minimally insured tortfeasor he would be required to fully reimburse the workmen's compensation carrier to the extent of the $10,000 recovery. The effect is a wash of the funds through the employee's hands and of no benefit to him. This has the same effect upon the injured employee as if the uninsured motorist coverage "Limits of Liability" provision were enforced. Therefore, the court held that the provision in question did not violate public policy.

Under *Ullman* the "Limits of Liability" provision is enforceable and, therefore, the insured injured employee had no right to recover from the defendant insurance company under the uninsured motorist coverage. Thus, in the case at hand, the workmen's compensation carrier's waiver was a waiver of a right that was nonexistent. We fail to see how this waiver of a nonexisting right of subrogation can be held to alter the holding of *Ullman*. The plaintiff has received minimum statutory compensation from his employer's workmen's compensation carrier and that is the maximum compensation that the uninsured motorist act was intended to guarantee. The act is not intended to guarantee the plaintiff any more than he has received. No one is guaranteed that his injury will be fully compensated, only that he will be able to receive up to $10,000 compensation when injured in an automobile which is under the provisions of an uninsured motorist policy. We therefore find *Ullman* is controlling and that the "Limits of Liability" provision is not violative of public policy.

In light of our holding we find no need to pass upon the plaintiff's other argument that "double recovery" does not justify the ruling because plaintiff's damages are greatly in excess of workmen's compensation benefits.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

NASH, J., concurs.

Mr. PRESIDING JUSTICE RECHENMACHER, dissenting:

I respectfully dissent from the opinion of the majority. The opinion is bottomed squarely on the *Ullman* case and adopts its reasoning,

disregarding the fact that the acknowledged basis of the *Ullman* case is missing from the case before us.

It is at once apparent in reading the *Ullman* case that it is based on the interaction between the workmen's compensation subrogation provision and the insurance company's policy provision reducing its liability under uninsured motorist coverage by the amount paid to the insured under workmen's compensation law.

The *Ullman* opinion sets out the insurance company's position as follows:

> "Wolverine, in defense, says that the provision in its policy permitting the deduction of workmen's compensation benefits does not reduce the amount of protection, financially considered, that would have been provided had the decedent been killed by an insured motorist who had met the minimum requirements of the Financial Responsibility Law by having $10,000 liability coverage. This results because any recovery the plaintiff would have received because of the negligence of an insured motorist would have been subject to the subrogation claims of the employer of the decedent for workmen's compensation benefits paid. Therefore, here, Wolverine points out, a full recovery of $10,000 from a motorist would have been more than offset by the subrogation claims of the employer in the amount of $14,000." 48 Ill. 2d 1, 3-4.

The *Ullman* court adopts this reasoning, on page 7, saying:

> "In Illinois, if the deduction challenged here is permitted, the employee's position is the same under the uninsured motorist's coverage as it would be had the tortfeasor carried the minimum insurance. Where the tortfeasor is insured, the employee reimburses his employer in full from the recovery from the tortfeasor. Where the tortfeasor is uninsured, the benefits paid by the employer are deducted from the recovery." 48 Ill. 2d 1, 7.

Thus, the court in *Ullman* obviously felt it was faced with the prospect of invalidating the insurance company's reduction of liability provision, without in effect benefiting the insured. Provisions such as that of the insurance carrier in the *Ullman* case, reducing the company's liability by the amount of recovery received from another source, are not an attempt to reduce the company's liability so much as a wish to avoid paying someone else's claim. That is to say, where another party is liable, but has in turn exacted a subrogation right from its claimant, the insurance company, in its turn, feels justified in protecting itself by specifically avoiding the effect of the subrogation clause in the other transaction, by inserting a provision to that effect in its contract. Thus the provision involved in *Ullman* has become a standard part of many insurance policies to be invoked in cases where otherwise the insurance company

would, in effect, be paying another person's legal liability under the doctrine of subrogation.

So viewed, the insurance company's policy provision here involved is defensive in character and is not against public policy because in most instances it takes nothing from the public. But where the insured and the workmen's compensation carrier or the employer have agreed that as part of their settlement with the injured employee, subrogation shall not be invoked against the employee, the basis of the *Ullman* decision disappears. Had the *Ullman* case merely held that regardless of any other consideration, the insurance company's provision reducing its liability by the amount of workmen's compensation benefits received, was a contractual limitation which must be enforced under contract law, we would have an entirely different legal situation. It would then not be a public policy question, but an ordinary case of enforcing the provisions of a contract. But, the background of the uninsured motorist coverage precluded such a narrow view. The coverage is required by statute and is obviously a public policy provision. The question that arose in the *Ullman* case, therefore, was decided on grounds of public policy and not merely as a matter of contract. The question was whether the policy provision reducing liability under such coverage below the statutory limits was in derogation of the announced public policy of protecting the public to a certain extent against the carelessness of uninsured motorists. The Supreme Court in answering the question in the negative was clearly influenced by the fact that the insured could not collect more than the workmen's compensation award in any event, since anything the insured collected from the insurance company under the uninsured motorist coverage would go back to the workmen's compensation carrier under its subrogation clause.

It must be borne in mind that this case was decided on the pleadings, strictly on the basis of the *Ullman* case. Any significant difference between that case and the present one removes the necessity for following the *Ullman* case as a precedent. The majority opinion here, in summarizing the *Ullman* case, says:

" * * * The majority concluded that if the deduction challenged were permitted, that the employee's position would in fact be the same under the policy as where the tortfeasor carried minimum insurance. In such a case, if the injured employee recovered any money damages from a minimally insured tortfeasor he would be required to fully reimburse the Workmen's Compensation carrier to the extent of the $10,000 recovery. The effect is a wash of the funds through the employee's hands and of no benefit to him. This has the same effect upon the injured employee as if the uninsured motorist coverage 'Limits of Liability' provision were enforced.

Therefore, the court held that the provision in question did not violate public policy."

The majority opinion, however, after thus summing up the rationale of the *Ullman* case, in the next paragraph totally ignores the reason why the Supreme Court held as it did and states that since the court held the policy provision reducing its liability to be enforceable, there exists no right of subrogation against the insurance proceeds and therefore the question of waiver of the workmen's compensation carrier's right of subrogation is meaningless.

In this reasoning I feel that the majority opinion is arguing in a circle, because it assumes the very thing to be decided—that the insurance company's policy provision is not under any circumstances against public policy. Until we decide that we cannot say there is nothing for the workmen's compensation carrier to be subrogated to.

The Supreme Court did not so hold. It simply held that because of the effect of the subrogation clause of the workmen's compensation statute, the policy provision in question was not against public policy. This much is clear from the majority opinion in the instant case quoted above. Thus, to ignore the subrogation provision of the workmen's compensation statute is to ignore the relationship between it and the insurance policy provision in question, which relationship is, according to the majority opinion, the nub of the *Ullman* opinion. If, indeed, the majority opinion rests on the arbitrary holding that the provision reducing the insurance carrier's liability is a matter of contract and enforceable without regard to public policy considerations, a couple of sentences would have sufficed for the opinion because on that basis there was nothing to be subrogated—the insurance company had no liability and nothing more need be said than that.

Obviously, the majority opinion here, in explaining the rationale of the *Ullman* case, avoids this position and relates the *Ullman* decision to the effect of the subrogation clause in the workmen's compensation statute. In so doing it opens the question raised by the waiver of that clause by the workmen's compensation carrier, which clearly affects the present decision.

The question of double recovery raised in the *Ullman* opinion and referred to by the majority in the case before us, is not in issue here. It is logical to assume that the injured employee gave up something for the waiver of subrogation by the workmen's compensation carrier and the injuries may well have been more than he received in benefits. But, if he did strike a bargain with the workmen's compensation carrier, he did not get the benefit of it—only the insurance company benefited. As Justice Ward remarked in his dissenting opinion in the *Ullman* case,

" * * * What concerns me is the implicit construction by the

majority that the legislature intended to permit an insurance carrier, by restricting its liability, as here, to financially advantage itself by the fortuitous circumstance that its insured when killed or injured was within the protection of the Workmen's Compensation Act." 48 Ill. 2d 1, 11.

This comment applies with peculiar force to the circumstances of the case before us. I would reverse the trial court's order dismissing the complaint.